The first case of the day is 4-14-0512, Richard Lucchese v. Ronald Plattner, et al., for the appellant, Attorney Steven Ward, and for the appellee, Attorney Jason Schutte. Thank you. Counsel, you may proceed. I would first like to apologize in the court for something that I did notice as I was preparing for your argument, and that is, in my reply brief, I cited a 1.3 opinion. I don't know how that happened, but I did. Fortunately, the law that I cited before is cited in another case, which I also cited. But I apologize in the court. I did not mean to do that. It just, for some reason, happened. This, the first issue of the open and obvious case, in this case, really talks about the first two elements of the common law of duty, and that is foreseeability and the likelihood of injury. The law, I think, is pretty consistent, consistently applied in this area. If there is no question as to the nature of the hazards, then the open and obvious question is a matter of law. If there is a question about the nature of the hazard, it is a question of fact. I think that the cases cited by both parties consistently apply that law. For example, if we take two of the cases and compare and contrast those, I think it illustrates it pretty well. The first one that I will use is the Wilkins case, where the plaintiff was walking over tire treads in the mud in a construction site. In that case, he describes the hazard in detail in the court. He talks about crumbling under his feet as he is walking and things like that. The court in that case said, you knew about that hazard, you were right in the middle of the hazard, so they held it open and obvious. In contrast, that is a case where there is no question about the nature of the hazard. If we now take another case, the Al-Khwadi case, it is about the visibility problem in an open and obvious case. In Al-Khwadi, there were two levels of the parking lot, and the plaintiff was unable to discern the difference in that height, in the level rather. The court in that case said, because of that visibility problem, it was not open and obvious. Your client not only knew, however, of the dangerous condition, he moved cautiously with regard to it. How does Al-Khwadi help you in any sense? It helped me because my client had an obscured vision by depth perception. The two levels had snow on both levels, and he said it was difficult to discern where the edge of that was. Al-Khwadi said she had no opportunity to appreciate and avoid the risk. Your client didn't only have the opportunity, he knew it. He knew it was there. He knew it was there. So what does Al-Khwadi have to do with your case? Well, like I said, it's the obscuring of whether or not the hazard is known. So it's an absolute liability offense for the defendants, given that your client knew it was there, and it's their absolute liability if, knowing it's there and moving carefully to avoid it, he nonetheless falls off the bank. I hesitate to say absolutely. Well, it seems to me that there's no defense for that. I mean, he knows it's there. He's moving cautiously to avoid it, and yet he falls off the wall. They're liable. So I think that that is the same situation as Al-Khwadi, and because of the difference in the visibility, the inability to discern where the hazard is, essentially is that he knew it was there, but he didn't know where. Well, he knew about the hazard, but he didn't know where the hazard was. So given the circumstances of what was going on on this particular day, there's no way they can avoid liability for his falling off the wall. I mean, he knew where it was. He was cautious. He walked carefully. Falls off the wall anyway. They're responsible, and that's just too bad for them. In this circumstance, I think that's true. I had occasion to mention yesterday's oral argument. The one problem I have with the idea of liability in civil cases and technical arguments from plaintiffs is it comes back to the notion, shouldn't the defendant have done something wrong before they're required to pay? What did they do wrong here? That's the whole nature of the case. The case has to do with the fact that they did not guard against that hazard. Had they done that, and that actually goes to the last two elements of the common law duty, but all they would have to have done is either put up a fence, put up something. The open and obvious nature of his hazard isn't enough to put the reasonable person on notice. They have to do something to protect the guy from falling off the wall that he has seen and is walking carefully to avoid. But he saw it. He couldn't see it, what he was doing. Well, he saw it before he started measuring. I mean, there's this law. I better be careful as I'm walking to measure, he says, right? I'm taking these careful little steps. Well, yeah. So a reasonable defendant can't rely upon his care to avoid this open and obvious hazard? That kind of overlaps with the distraction issue also, though. I mean, what Your Honor is talking about. Because Your Honor is talking about having to watch where he's going to avoid the hazard, which also goes to the distraction. Is there any case that stands for the proposition that the distraction may be of the plaintiff's own creation? Like here? It should not be. See, this distraction was his own creation because he's walking around trying to measure something. None of the other cases deal with the distraction of his own creation, do they? He was doing a job. He was doing an appraisal, which is his job. I don't think that it is something that he created. It's not something he created. He's doing his job as an appraiser for a bank because the plaintiffs, or excuse me, the defendants, were selling their house. I don't think that doing his job for the banks and for the defendant is a self-imposed, self-created problem. Well, if I'm walking around there on the same day and I'm not trying to measure it, there's no distraction for me, is there? If you're walking around and you're not doing it? Yeah, I'm just walking around and I see this fall off. But if you're walking and trying to measure it, then that's the distraction, is it? I think that's right. And that's not self-created? No. I don't think it is. He's doing a job. The self-creation of a distraction is better. The Wilfong case is a distraction case. In that case, that was also a distraction case. I use it as an open object. But the distraction there was he picked up his cell phone and started talking on the cell phone. This is not that kind of a situation. This is not a self-created... Had it not been for the fact that the defendants were selling the house, and had it not been for being retained by a bank to do it, he's not going to be doing that. If he just walked out there and started measuring the property, or was just walking around, as Your Honor stated, I don't think that might be a different situation. Certainly, Your Honor, walking around would be a different situation. But I do not consider this to be a self-created distraction. Does it matter that your client chose to do this appraisal when the wall was covered with snow? When the ground was covered with snow and dirt? I don't think it does, because... First of all, the decision to do it was the bank's, my client's, and the appointment had to be confirmed by the defendant. So it is not... And I think that the only importance, I think, of the snow in this situation is the death perception problem. The fact that it is not open, and obviously because of that. I don't think, other than that... Well, other than that, it could be, I guess possibly, in the nature of comparative fault. But in that situation... But they've already admitted that he was not being negative. So I think, as far as the snow is concerned, I don't think that it's making a difference. First of all, he did not make the determination on his own. And second of all... Well, I thought the fact that his death perception was, for lack of a better word, aggravated, I thought that was because of the snow. That's correct. Why doesn't that tie into, then, the question I asked before, the snow being on the wall as being something this court should consider? Well, right. Okay. Okay. I understand what you're saying. I'm saying maybe he could have picked a different time to do the wall measurement. Well, I guess that's true. But it wasn't only his idea. I mean, it wasn't only his doing that he was there. The date was set with the approval of the defendant, and also talking with the employer, with the bank. Could they have done it on a different day? Of course they could. But in this situation, he's going to do it because that's how he makes his money. And everybody has agreed to do it on that date. Well, he's going to be out there doing it. So I think that the fact that the snow is there does go back to the open and obvious obscuring of the vision. That would be the importance of the snow. And on that same subject, on the subject of looking where he was going, there are two cases. The American National Bank case is the case where the court said that the billboard worker had to be looking where he was going to try to avoid the hazard. And they still found a distraction because he had to be careful of where he was stepping. And that was brought up earlier, that particular case. Also, as far as the distraction is concerned, another thing to consider here is, as the Bruns case says, it's not where you're looking, it's why you're looking. And I think that there's a reason that the plaintiff was looking to make sure the measurement was proper. And there's a reason that he was, as in the American National Bank, watching where he was going. And both of those cases are discussed in court. Okay. I think that we've already touched a little bit on the economic compulsions of this. I think this is a question that came out. There was, he's self-employed. This is the only way he makes his money. He is going to address or going to do this despite any hazard because he has to make money. Was there any testimony about how he had to do it that day? The bank required him to do it that day? Certainly the defendant didn't require him to do it that day. Did the bank require him to do it that day? Did some evidence support that? There is. What is the evidence? The evidence is that my client's testimony was that it is mandatory that the client make it mandatory for him to go out on that date. And that's in his deposition. He couldn't have done it the next day? He could have done it any time. No, he couldn't have done it the next day. The record shows that it had to be that moment. I misspoke. Your Honor's question was did he have to do it that day. It is mandatory that he goes out when the date is set. And that is testimony from the student case. It is not an option or he's going to lose his business. How does this work? He's an appraiser for a house sale. And the bank says you need to appraise this house. And they say you've got to do it Tuesday morning between 9 and 10 or some such thing? That's the way I understand it. Does that make any sense? That's what the evidence is. The bank's going to be concerned. It certainly does because they have to move the mortgage. You know, counsel, I'm reminded in a jury trial, we instruct the jury that you may take your common experiences in life into consideration. I don't know your common experiences in life about selling and buying homes. But the idea of it's got to be on a particular morning that this is going to be done certainly strikes me as contrary to my experiences where there's no wiggle room or leeway. I mean, the bank will tell you when they're ready to go and no sooner, you know, in the space of about two to three weeks maybe. And the notion that somehow it's got to be that morning or forget it just strikes me as inconsistent with common experiences in life. But you're maintaining that that's what this record shows? It is. He was forced to do it this day, that morning, whatever, and it couldn't have been delayed 24 hours. The word used by Mr. McKinsey is at demand. That is the word that he uses in his testimony. Okay. Very briefly, because I'm not going to have time to flesh out this entire issue, very briefly with respect to the affidavit. I think that the affidavit, number one, we could probably win without it. But the point, the thing with the affidavit is that the fact relied upon, I think we're at a point where we can't see the forest with a tree. I have all this testimony, all these cases flying everywhere. The fact is that the fact in the affidavit, the fact relied upon by Mr. Peterson is an uncontested fact. And so I think that that makes the situation much, much different. There's no question that, and the fact being that the drop was more than 30 inches. Nobody can test that. Mr. Plattner said it was four feet, I think she said. My client says it was five to five and a half. I'm out of time. Mr. Ward, you'll have more time on rebuttal. Mr. Schutte. If I might, I'd like to touch base on some of the questions you posed to the appellant before I go into my argument. Regarding the snow present on the wall, I certainly think that's an issue to be considered in numerous issues in this case. First, the foreseeability. We're going to talk about the foreseeability that my clients know that a possible injury could occur in this location when it's present on their property. Is the snow and the lack of visibility, is that also a factor for foreseeability? Because that's certainly not present all the time. That certainly calls into question the amount of risk posed by this wall. Moreover, regarding this visibility and whether it's known or an obvious condition, this is another factor that's not under the control of my clients. And as Your Honor mentioned regarding whether there are any cases stating that the distraction can be under the injured party's control, I would suggest that there are none. That issue is very well flushed out in the Runners v. Centralia case, where they've stated cases where they have found the distraction to have been implied. Those cases involve some control and a reasonable expectation of distraction on the part of the property possessor. I think the Wilman case is very on point in this case. And actually, the reasoning expressed in Wilman is accepted by the Supreme Court in the Runners v. Centralia, when they effectively state that the distraction can't solely be under the injured party, the invitee's, control. And in Wilman, it's a case where an electrician has been brought on to a facility, I believe it's some kind of manufacturing plant, to perform some work. He's working with some conduit, and the conduit he's working with presses a wire on the electrician. But he's there to perform a certain task. And that's exactly what Mr. Casey is here doing in this instance, is he's here to appraise a house. And he's using a tape measure to measure this wall. So I find it hard to state or find any facts to support that the distraction was anything but fully under Mr. Casey's control. Regarding whether the date of the appraisal is mandatory, there is some language where Mr. Casey talks about this mandatory to be performed with appraisal. And it's on page 60 of his deposition. And I'll recite it for the court to bear with me. I ask, in his deposition, if it's mandatory to appraise when there is 8 inches of snow on the ground. Or I ask him how many of you have appraised when there are 8 inches of snow on the ground. He says quite a few. I ask you to consider that as a practice. His answer is, practice that's mandatory in my business. I ask, they mandate, he interrupts me a little bit and says, with conditions like I was having the day I was there. My question, who makes it mandatory? My clients. We're not talking about appraising on this day. We're talking about appraising in these weather conditions. And I would assert that my clients had no control whatsoever of the date that was selected here. Mr. Casey admits that he determined when he was going to appraise the house. He contacted the realtor who was arranging the sale of the house. The only involvement my clients had was to approve when he wanted to come. They didn't schedule this. They didn't mandate it. He was not an agent of my clients. And they didn't pay us at all. But to address my actual argument to the court, I think the basis for turning to trial court is clear from the facts of this case. If you look at the way this whole matter evolved. Mr. Casey arrives after I've stated when he works through the realtor of setting the date and time to appraise the house. He arrives at the property. He's fully aware, as he has been for years, that there was snow on the ground. Walks up to the front of my client's house in Oslin, Georgia's Platteners. There he is. He tells her who he is. He's going to appraise the house. And he asks that she leave open the garage door so that he can enter that too. He eventually falls on the back side of the house, over a wall that extends perpendicular from the back wall of the house. As is depicted in the diagram that's included in this deposition, which is impressive. He walks and measures the front of the house to the left corner, as he would. And he measures the left corner to the back left corner of the side wall. And he measures the back left corner to the retaining wall. Up to the retaining wall. There's no denying that he knew the retaining wall was there. As a matter of fact, he then walks around it, up to the uphill side of the retaining wall, and pulls a tape measure from the deck, which is parallel to the retaining wall, and measures the retaining wall, and eventually falls over. Certainly very little time has passed from the point where he walks around the retaining wall, to the point where he falls over. Another factor that I think the court should definitely consider are the photographs that are in the record in this case. There's some issue with them being copied in the record, because they were initially black and white. We had to file a supplementation of the record to have color photographs before the court. Which the court should have. But they clearly show that the snow stands out away from the retaining wall, and what it looks like. And it obviously contests the house, which is brown. Mr. Lucchesi doesn't contest the appearance of the house in his photographs. And it's obvious from the photographs that the house is a brown, vinyl-sided house. The texture of the house, the texture of the wall, and the texture of the snow are all different. And moreover, parts of the wall jut out of the ground, because it's got stepped in. It's not a smooth step-down retaining wall. It was an obvious condition. Just briefly to touch on the factors of what determines whether a condition is open and obvious. A condition is open and obvious, and the property owner does not owe a duty to a pair to then buy a piece for such a condition, but it's obvious and noticeable. As I mentioned, the shape of this wall, it's condition, what it looked like on the best day, it's obvious a condition. It's clear that the condition was obvious. Secondly, whether the condition is known. Well, Mr. Lucchesi measures the wall. He had to walk around with it. He knew what it was like. There's no contesting these points. And as the court has well versed, and as the Supreme Court has stated many times, in common conditions of open and obvious conditions, such as fire, water, height, it's presumed that individuals exercise due care when encountering those conditions. And the law in Illinois presumes that Mr. Lucchesi can exercise due care when he's approaching this wall, in obvious open and obvious conditions. Regarding the visibility argument in the claimant, I do not believe Al-Qaeda is controlling on this case, because there are different issues at hand in that. There's issues with the lighting, whether she can see it, and the fact that she hadn't encountered this feedback before. In our case, I don't know if Mr. Lucchesi encountered the feedback before. He encountered it seconds before it fell open, or maybe minutes. Also, the alleged problem with the visibility is snow. Not lighting, not whether somebody painted a height differential in concrete. This should be snow, an item that Lucchesi had no control over. And in a case where he's encountered this snow, they have not requested for their benefit that he be present on the property he encountered in the first place. So I think there's simply no basis to find that there's a distraction exception, or that there is a visibility problem here, that in any way correlates with a fault on the part of my clients. The next issue, which I think is key, is the distraction exception. I don't see how the distraction exception could ever apply in this case. For one reason, the plaintiff ultimately makes you want to distract. He says, he pulls his tape measure, he walks toward the wall, he's looking for the wall, he's looking to the right, he slows down, and as the court mentioned, he took caution to avoid falling over the wall. So how one can be distracted from something they're obviously trying to avoid, I just don't see how there's any merit to that argument. And then also, the argument that we previously touched on, whether the distraction is solely their control. I stand on my arguments previously on that. I think it's very clear that the issue of the distractedness within Casey was under Mr. Casey's sole control at that point in time. The next issue is the deliberate encounter exception. As the court is aware, this applies when the homeowner is aware of a open and obvious condition, and they should reasonably expect that the invitee will encounter, or she will be encountering this risk because the evidences outweigh the risk posed to the plaintiff. But generally, I think this is, and I don't think it's generally as clear as the case law states, this must be determined from my client's perspective. And there is no evidence to show that my client reasonably should have expected that Mr. Casey would encounter this wall that presented an open and obvious condition. Moreover, we've asserted in our brief that, essentially, the only fault in this case is Mr. Casey's, and it should be barred by comparative fault. We based that off of her attempt for a district case out of June and Payne, where a gentleman fell on a utility pole. It's very clear that Mr. Casey, when he is performing this appraisal, he's an experienced man. He's told us he's done this for 10,000 appraisals. I think it's irrational to think that the case, or the plaintiff, could not reasonably expect him to use a new care to avoid this open and obvious condition, especially when it's very well aware that he just walked around it. A few other points, which I don't think are the main points, but certainly relevant, are the issues of the building codes. The plaintiff cited in their brief section 710.03, that is the Springfield Enhancing Enabling Code, I believe, where they accept portions of the various international building codes, and also section 312.1 of the International Residential Code, the International Building Code. These were never cited in the plaintiff's prior briefs, and also, Mr. Peterson, the moving investor, did not rely upon them for his affidavit, which we believe the court probably struck. Additionally, Mr. Plotner, whose testimony is uncontested, states that his house was not within Springfield City limits. Admittedly, he had a Springfield address, but that certainly doesn't mean he followed the national jurisdiction. I grew up on a farm outside of Payson, Illinois, and I had a Payson address, but I lived two miles from Payson. So I think that's a very similar case here. Mr. Plotner lived in the county. The question becomes, what's the law in the county? And nothing's been shown to indicate that the codes cited by Mr. Peterson, in fact, were in effect in the county. And that, again, goes to the argument that his Rule 191 affidavit is sufficient. I think there's a very solid argument to be made there. The Supreme Court is very clear in the recent case law that in a summary judgment setting, it will strictly require the requirement of the Supreme Court Rule 191A, which require statements to be made on personal knowledge, that they set forth with particularity the facts upon which they are based, that there shall be a past certifier to sworn copies of documents relied upon, and that they shall not consist of mere conclusions. In this case, let's give a little procedure on this particular point. We initially filed a motion to strike because the plaintiff only referenced their witness disclosure of Mr. Peterson. No affidavit was provided whatsoever. In order to remedy that, the plaintiff obtains an affidavit and submits it with no documentation attached whatsoever. As a matter of fact, as I noted in a footnote in our brief, the only documents, the only codes of which are relied upon allegedly by Mr. Peterson that are in the record, were provided in our subsequent motion and applied to the affidavit, and they were taken from the plaintiff in response to our request for gifts. So the plaintiff has failed to provide all the documents he's relied upon. Moreover, while I admit he cites the transcripts of the deposition, which are certainly sworn statements, he doesn't state what parts of those he relies upon. He doesn't state what parts of the record he relies upon in determining the height of the walls, what the walls are, why his opinions apply to the walls. Basically, it's an insufficient period to meet the requirements of Rule 199A. I would also argue that the sections that he relies upon to find that my client should have put a barrier on the retaining wall also don't apply because they specifically cite issues such as balconies, walkways, and porches. This case is a retaining wall. This is not an issue of walkways or porches or anything. And I state that I believe the Court should review the Supreme Court's opinion in the Schultz matter, where they discuss what a retaining wall is in comparison to the Bush regulations. They talk about platforms and what a platform would regard as a barrier. The Supreme Court says a retaining wall is essentially a wall that separates an upper level from a lower level. It's not what the plaintiffs are saying it is, and therefore it falls outside of the curve that the expert relies upon. If the Court decides that his opinion should have been considered in the first place. Last year, I would like to touch on the contributory issues very briefly. As I mentioned, this is a case that, in my opinion, is very similar to the Burkett case, which was another Fourth District appellate case written by Judge Meyers, where they discuss a tree trimmer who is providing some tree trimming next to this utility pole. Illinois Power becomes aware that this gentleman, Mr. Burkett, is doing this trimming, and they approach him and tell him that they would like him to wait until they remove the utility pole before he would trim the tree. He agrees. He comes back later and sees the utility pole is cut down, but it's left as stuck above the ground. Mr. Burkett decides to pursue the trimming of the tree, and on to the tree, and begins cutting the claws of the injured himself. I think that this is a case that is very common with the case at large. As I mentioned, Mr. Burkett told me in his deposition, he was a very serious gentleman. He obviously paid attention to that injury himself, and he's just one of the appraisals. And he did this well. He decides to proceed in line with the case. He's not distracted, and then he stops cutting the injury. I wouldn't argue to the court that there's anybody who would object to Mr. Burkett's injuries, Mr. Burkett's injuries. So, in light of these arguments drawn in the facts of the case, I would certainly request the support from all the members of the trial court. Could you discuss in your brief the argument that the plaintiff made that the trial court improperly denied, or improperly granted your motion to strike the affidavit of Peterson? Did I include it in my brief? Did you discuss it? Yes, I did. I see 22. It begins on page 3. Okay. You cited the Robidoux case there? Yes. Okay. I just wanted to make sure. In the statement, I don't think you mentioned Robidoux in your earlier citation of cases on pages 6 and 7. I apologize about that. No, no. My distinguished presenting judge has just pointed out that you did, and I missed it. So, my apologies, counsel. No problem. Thank you. Thank you, Mr. Schuette. Thank you. Mr. Ward, any rebuttal? Yes. A couple of things that I want to talk about here, and that is the American National Bank case, the Supreme Court case I told you is worth reading in this case. It had to do with the careful walking to avoid a known hazard. In that case, of course, the fact is to be expected that he did that. And by doing that, he was distracted. So, I think that that is a case to look at. Also, the Bruns case had to do with where are you looking as far as predetermining the distraction. Where are you looking? But they said it's not exactly where you're looking, it's why you're looking. In that case, the plaintiff was looking at the front door of an ICE clinic for no reason, no particular reason. And they said, therefore, that's a self-imposed distraction. And so that demonstrates our position also. The photographs, I think, particularly the ones with the snow, are basically worthless because they were taken at least a week after this case happened and it does not accurately show what the plaintiff saw. Also, as far as living in Springfield, that was admitted. And I think I took that in my brief. Comparative negligence. In order to determine that, this court is going to have to find, as a matter of law, that there was more than 50% fault. And I think that there are facts that would make that impossible to do. So, I don't think the court... In your discussion in Robidoux, in your brief, the Supreme Court said 191A must be strictly complied with. The rule says that the affidavit shall have attached thereto sworn to certified copies of all documents upon which the affidavit relies. How can you, under this record, claim you have strictly complied with the rule? As I said before, I think that the distinction here is that this is an uncontested fact. And I think that in the Robidoux case, there were contested facts. And in the Robidoux case, there were networks that were not tagged. And so I think that the point there is that these are contested facts as opposed to Robidoux, which were not. And also, in addition, the... So the Supreme Court didn't mean to say shall have attached all documents relied upon. They meant to say shall have attached all documents relied upon when the facts contained therein are contested. No, they were not presented with that. They were not presented with an uncontested fact. They were contested with... They had contested facts. And in the Pandaya case, which I cited in the summary judgment part of my brief, it says there is no other evidence can be presented once something has been admitted. And the fact that this drop is more than 30 inches is not a contested fact. So that is part of my response. I would leave the rest on my brief. The bottom line here, and I'm running out of time. So the bottom line here is that there are contested facts in this case. There are contested facts about the visibility of the hazard. There are contested facts about distraction. I think that the case law in the Supreme Court case law in American Anticlopics supports the fact that this was a distraction. And with those questions, the fact in this case, I do not think that it would be appropriate to affirm the trial court. One more thing, the first half, which I didn't talk about before, there was no impairment of vision in that case. There was no evidence of distraction, no evidence of forgetfulness. Thank you. All right, thank you, Mr. Borg. We'll take this matter under advisement and be in recess. Thank you.